ATTORNEY DISCIPLINARY PROCEEDINGS
JjPER CURIAM. *
This attorney disciplinary matter stems from one count of formal charges filed by the Office oPDisciplinary Counsel (“ODC”) against respondent, Ray C. Harris, an attorney licensed to practice law in the State of Louisiana.
UNDERLYING FACTS
Respondent represented Robert Haynes in connection with a charge of burglary. On March 11, 1994, Mr. Haynes was convicted and sentenced to eight years in prison. Following the sentencing hearing, respondent advised Mr. Haynes he would handle his appeal on a pro bono basis, with the condition Mr. Haynes provide the costs of the trial transcripts. Four days later, on March 15, 1994, Mr. Haynes signed a written agreement which specified that he was responsible for the costs of all transcripts, copying, and binding fees in the *964 amount of $1,200, to be paid in three $400 monthly installments.[1] Moreover, the contract stated that the payments were to be “made to Attorney Harris’ office and maintained there within my case file. |⅞...” The contract further stated respondent would advise Mr. Haynes when all of the funds were received and would “thereafter file my appeal.”
Approximately nine months later, on December 19, 1994, Mr. Haynes wrote to the clerk of court seeking to determine the status of his appeal. The clerk advised that no appeal had been filed on his behalf. Several months later, on April 19, 1995, Mr. Haynes filed a complaint against respondent with the ODC, alleging neglect and lack of communication. Respondent filed an answer to the complaint, representing the delay stemmed from the court reporter’s failure to complete the trial transcripts and the trial court’s failure to complete the record.[2] Based on this response, the ODC dismissed the complaint.
On February 6, 1996, Mr. Haynes and his mother, Patricia Haynes, made the first payment of costs to respondent. Respondent sent a letter to Mrs. Haynes dated February 23, 1996, in which he indicated he spoke to the judge and expected to have the transcripts by March 1, 1996.
Mrs. Haynes continued to make periodic payments to respondent during the following year for a total of $1,100.[3] Respondent later admitted he did not place these funds in his client trust account, suggesting that he instead purchased money orders for each of the amounts as they were received and put them in his client’s file where, according to respondent, they remained for the entire period of the representation, as provided for in the agreement executed by Mr. Haynes.
At some point, Mrs. Haynes concluded from discussions with respondent that he waived the remaining $100 balance and would complete the matter for the $1,100 amount he had already received. However, respondent failed to take any action in the | .¡matter. As a result, on September 2, 1997, Mrs. Haynes filed a complaint with the ODC. In his response to the complaint, respondent contended “the appeal ... has long been completed” and, when Mrs. Haynes paid him the balance of the funds, he would “take all steps possible to get Robert released from the Department of Corrections.” Subsequently, respondent acknowledged the funds had never been kept in trust and, in contrast to his earlier statement that the appeal had been completed, respondent now stated that he would begin work on the appeal after he received the transcripts.
DISCIPLINARY PROCEEDINGS

Formal Charges

On November 21, 1997, the ODC filed formal charges against respondent alleging several violations of the Rules of Professional Conduct. The formal charges alleged respondent violated Rules 1.3 and 1.4 of the Rules of Professional Conduct by neglecting Mr. Haynes’ appeal and failing to keep him informed of the status of his appeal. The charges further alleged respondent failed to place advanced costs in his trust account, as required by Rule 1.5. Finally, the charges alleged respondent vi *965 olated Rules 8.4(a) (violating the Rules of Professional Conduct) and 8.4(d) (engaging in conduct prejudicial to the administration of justice). Respondent filed an answer denying any intentional misconduct.
Shortly thereafter, respondent forwarded to Mr. Haynes two letters threatening civil action if he and his mother continued to pursue the disciplinary complaint and testify against him. When confronted with the correspondence at Mr. Haynes’ deposition, respondent stated that he did not know his conduct was improper.
l4In his deposition, Mr. Haynes testified as to respondent’s inaction in handling his case. He stated that after respondent agreed at the sentencing hearing to handle his appeal, he never saw him again. However, he admitted the written agreement executed four days after the sentencing hearing evidenced his signature. The ODC showed Mr. Haynes nine letters dated between February 6, 1996 (date of the first payment) and August 6,1997 directed to him from respondent discussing the payments made and the balance of the costs due. Mr. Haynes recalled receiving some of the letters, and was unsure about the others.

Formal Hearing

On July 22, 1998, a formal hearing was conducted. The parties stipulated to the basic underlying facts. The ODC produced a written statement from the court reporter indicating she had never been asked for the total costs associated with transcribing Mr. Haynes’ case and, had she been asked, she would have charged a sum of $500.[4] Respondent testified he did not intend to order the transcripts until the full amount of the costs had been paid because he did not want to be “badgered” by the court for the funds in the event his client failed to provide payment prior to the completion of the transcripts. Regarding the letter to Mrs. Haynes dated February 23,1996 stating he already ordered the transcripts, respondent testified his intention was to say that he would order the transcripts in the future when the balance of the costs were paid.
Respondent admitted the costs were not held in his trust account, but denied converting the funds to his own use. He alleged Mr. Haynes wanted the funds to be readily accessible in the event something happened to respondent. Respondent | .^claimed that in an effort to comply with his client’s wishes, he immediately purchased money orders for the same amount when he received the payments and placed them in his client’s file, where they allegedly remained at all times. As evidence, respondent produced copies of seven money orders allegedly purchased in 1996 and 1997 that were taken from his client’s file. He stated the originals were forwarded the day before the hearing via certified mail to Mrs. Haynes as full restitution at the request of ODC.[5] Because the copies of the money orders were blank and not dated, the record was left open at the conclusion of the hearing in order to obtain verification of respondent’s representations to the committee and the ODC.
A few weeks after the hearing, the ODC obtained copies of the original money orders ultimately received by Mrs. Haynes.[6] Upon recognizing that some of the money orders did not bear the same serial numbers as those submitted at the hearing, the ODC sought the assistance of the K & B/Rite Aid Corporation, the issuer of the money orders, to obtain further information. Although respondent claimed the money orders had already been mailed to *966 Mrs. Haynes at the time of the formal hearing, the ODC discovered two of the money orders were in fact purchased after the hearing. Further, the money orders produced at the hearing were not purchased in 1996 and 1997, but rather in the spring of 1998, including several on the day prior to the formal hearing. Finally, the ODC learned three of the money orders produced at the hearing were payable to the Louisiana State Bar Association, South Central Bell and respondent himself, respectively.
lain light of its findings, the ODC sent respondent a letter on September 2, 1999, stating “[w]ithout a doubt, the money orders which you produced failed to support your testimony and in fact suggest that the testimony provided was false.” The ODC indicated it was requesting that the hearing be reconvened for the purpose of taking additional testimony and indicated “[t]he purpose of this correspondence is to provide you with notice pursuant to Rule XIX of the allegations of misconduct so as to provide you with an opportunity to properly prepare.”
One month later, on October 2, 1998, the hearing committee was reconvened and the parties stipulated to the ODC’s findings with respect to the money orders.[7] Respondent could not produce evidence to support his claims that he had forwarded any money orders by certified mail to Mrs. Haynes prior to the first hearing. In an attempt to explain the inconsistencies with respect to the money orders, respondent tried to submit a copy of an affidavit allegedly executed by his sister. In the affidavit, respondent’s sister, who allegedly had been employed in his law office, stated she 17converted the original money orders purchased in 1996 and 1997 to her own use, and later purchased replacement money orders. According to respondent, his sister died three days after executing the affidavit. Respondent was the notary on the affidavit. Respondent indicated he would not produce the two individuals who witnessed the affidavit, as they would be unable to testify to the document’s contents.
The ODC objected to the admissibility of the affidavit as hearsay and the committee sustained the objection. The committee offered to let respondent proffer the copy of the affidavit on the condition he produce the original; however, he failed to do so.
The ODC filed a post-hearing brief proposing disbarment. Respondent filed a brief denying any intentional misconduct and blaming his deceased sister for the money order discrepancies.

Recommendation of the Hearing Committee

The hearing committee found the ODC failed to prove by clear and convincing evidence that respondent violated Rules 1.8 and 1.4 by neglecting Mr. Haynes’ appeal or failing to keep him informed. The committee found it was reasonable for respondent to expect his client to pay the costs in full prior to taking any action on *967 the appeal, as provided by the written agreement. Moreover, the committee noted the ODC failed to offer any precedent indicating it was improper for respondent to rely on his professional judgment in estimating the costs. The committee placed great weight on respondent’s testimony that he spoke with and corresponded with his client and persons on his behalf regarding the cost payments.
IsHowever, the committee concluded respondent violated Rule 1.15[8] when he failed to place the funds in trust and was unable to offer any evidence to corroborate his testimony that he purchased and kept money orders in his client’s file, especially in light of the inconsistencies with regard to the money orders. Moreover, it determined respondent violated Rule 1.5 in failing to timely return the unearned funds after the ODC ordered restitution at the time of the July 22, 1998 hearing.[9] The committee also found respondent violated Rule 8.4(a), which prohibits attorneys from violating the Rules of Professional Conduct, and Rule 8.4(d), which involves engaging in conduct prejudicial to the administration of justice. With regard to the latter provision, the committee did not make a finding of fact that respondent provided misleading information to the committee in connection with the money orders. Rather, the committee simply noted that while respondent offered an explanation for the inconsistencies in the money orders, he “failed to offer sufficient corroborating evidence to be persuasive.” The committee concluded these inconsistencies, coupled with the threatening letters respondent sent to his client, amounted to a violation of Rule 8.4(d).
In imposing a sanction, the committee found the baseline sanction for respondent’s conduct under Standard 4.13 of the ABA’s Standards for Imposing Lawyer Sanctions[10] was a public reprimand. It recognized the presence of several mitigating factors, including respondent’s lack of a prior disciplinary record and praise from the client in respondent’s handling of the initial pro bono assignment. It |apointed out respondent’s misconduct stemmed from his client’s failure to fulfill obligations under the written agreement, and there was no evidence of conversion or deception. It also recognized respondent made payment of restitution. Finally, while it ultimately rejected respondent’s defense to the charged violations, it found respondent offered “un-impeached testimony” in support of his defense. Accordingly, the committee recommended a public reprimand be imposed.

Recommendation of the Disciplinary Board

The disciplinary board concluded the committee erred in failing to find respondent neglected a legal matter, in violation of Rule 1.3. In support, it found respondent neglected to speak to the court reporter regarding the estimated costs, neglected to advise his client it would have only cost $150 to start the transcripts, and misrepresented to Mrs. Haynes that he ordered the transcripts after she made her first payment. The board also determined there was sufficient evidence respondent failed to keep his client reasonably informed, in violation of Rule 1.4. It found that while respondent spoke to and wrote letters to Mr. Haynes and others on his behalf concerning payment of the $1,200, he did not adequately communicate con *968 cerning the status of the appeal, the legal issues, and the actual cost and availability of the trial transcripts. Moreover, the board concluded the committee erred in failing to find respondent violated Rule I.5(f)(4), which requires advanced costs and expenses be placed in the lawyer’s trust account.[11]
Finally, it determined the committee erred in failing to find a violation of Rule 8.1(a), which prohibits a lawyer from knowingly making a false statement of material |10fact in a disciplinary proceeding.[12] In support, the board relied on respondent’s numerous misrepresentations concerning the details of his purchase and retention of the money orders. It further concluded the threatening letters constituted conduct prejudicial to the administration of justice.
In all other respects, the board adopted the committee’s findings. In particular, it agreed the evidence did not indicate respondent was trying to convert, deceive, or deprive Mr. Haynes of the money, and that respondent ultimately paid restitution. However, it found his actions were negligent in the handling of the appeal and the safekeeping of the costs, and knowing, if not intentional, as to the false testimony. The board found there was significant injury stemming from respondent’s neglect and failure to communicate in that Mr. Haynes was denied the opportunity to seek post conviction relief for a period in excess of three years.[13] Also, Mrs. Haynes and her son were deprived of the use of $1,100 for over two years.
Considering these factors, the board relied on this court’s opinion in Louisiana State Bar Association v. Hinrichs, 486 So.2d 116 (La.1986), for the proposition that the baseline sanction for respondent’s misconduct was a one-year suspension. Based on the mitigating factors of absence of a- prior disciplinary record and lack of dishonest motive, the board deviated downward, and proposed a six-month suspension followed by a one-year period of probation.
Both parties filed objections to the board’s recommendation. Accordingly, the matter was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
InDISCUSSION
With regard to the misconduct alleged in the formal charges, we find the record supports the conclusion that the ODC proved these charges by clear and convincing evidence. The record clearly demonstrates that respondent neglected Mr. Haynes’ appeal in violation of Rule 1.3. While respondent takes the position he did not need to commence the matter until full payment of costs had been received, respondent knew the transcripts could have been started for $150, and by simple inquiry would have learned the entire cost of the transcripts would not have exceeded $500. Likewise, respondent violated Rule 1.4 by failing to make any meaningful attempt to communicate with his client for over three years, other than requesting payment of costs.
The record further reveals respondent violated Rule 1.5(f)(4) by failing to place advanced costs in his trust account. Respondent admitted he did not place the funds received from Mrs. Haynes in his trust account, but instead claims he changed the funds into money orders and held these money orders in his file.
In imposing discipline for these violations, we find there are several aggrava *969 ting factors present. Respondent’s neglect caused significant harm to Mr. Haynes by delaying his appeal for over three years. He deprived Mr. Haynes and his mother of their funds for a lengthy period of time. Respondent also made misleading statements to his client and the ODC, during its investigation of Mr. Haynes’ previous complaint, regarding the status of the appeal. The sole mitigating factor is respondent’s lack of a prior disciplinary record. Under these circumstances, we conclude the appropriate sanction for respondent’s misconduct as alleged in the formal charges is a suspension from the practice of law for a period of eighteen months. However, this finding does not end the matter.
|12The most troubling aspect of this case is the alleged misconduct which occurred after the filing of formal charges, both with respect to the threatening letters respondent wrote to his client and the apparent misrepresentations made by respondent to the hearing committee regarding the money orders and the affidavit. In assessing this conduct, we must determine whether respondent’s post-formal charge conduct should be considered as an aggravating factor in connection with the original misconduct, or should be treated as separate and distinct misconduct.
Under the circumstances of this case, and in consideration of the interests of justice and due process, we believe this misconduct should be alleged by separate formal charges. We recognize that the ODC could not have anticipated respondent’s actions at the time it filed the formal charges. After the ODC concluded respondent made misrepresentations during the original hearing before the committee, it made an effort to inform respondent by letter that it would present these allegations when the hearing was reopened. Nonetheless, we find the ODC’s letter is not an adequate substitute for the filing of formal charges pursuant to Supreme Court Rule XIX, § 11(E). Without formal charges, there was nothing to inform respondent what professional rules were violated, or what specific allegations the ODC intended to prove.[14] The procedural confusion is evident from the fact that the hearing committee made no specific findings with regard to these allegations. Moreover, the filing of formal charges alleging fairly serious misconduct at the original hearing may have [^caused respondent to re-evaluate his decision to represent himself at the subsequent hearing, and prompted him to hire separate counsel. Under these facts, we conclude the most prudent course of action is to defer consideration of this conduct and remand the matter to the Office of Disciplinary Counsel to consider filing new formal charges.
In sum, we will discipline respondent for the misconduct asserted in the original formal charges. However, we will defer any action at this time on respondent’s post-formal charge conduct, and remand the matter to the ODC for consideration of filing new formal charges. In the event discipline is recommended on these new charges, the discipline we impose this day may be considered as an aggravating factor in that proceeding.
DECREE
Upon review of the findings and recommendation of the disciplinary board, and *970 considering the record, it is ordered that respondent, Ray C. Harris, be suspended from the practice of law for a period of eighteen months. The matter is remanded to the Office of Disciplinary Counsel for further proceedings consistent with this opinion. All costs and expenses of these proceedings are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest commencing thirty days from the date of the finality of the court’s judgment until paid.
LEMMON, J., concurs and assigns reasons.

 Walter F. Marcus, Associate Justice ad hoc, sitting for Justice Bemette J. Johnson, re-cused.

. As to respondent’s $1,200 estimate, he testified he used his professional judgment to conclude the transcripts would be about three hundred (300) pages. Relying on La. R.S. 13:1373 and 13:1381 relative to transcripts costs, he determined the original transcripts would cost about $750 ($2.50 per thirty-one (31) line page) and the certified copies would cost $450 ($1.50 per thirty-one (31) line page) for a total of $1,200. In fact, the court reporter later testified the cost of the transcripts would have been approximately $500.

. It was later revealed that respondent had never requested the transcripts from the court reporter.

. Mrs. Haynes paid respondent a total of $1,100 on the following payment schedule: 2/6/96 — $500; 6/6/96 — $250; 11/8/96 — $100; 2/4/97 — $100; 2/6/97 — $50; 2/8/97 — $100.

. Notably, this amount did not include the costs of the certified copies of the original transcripts.

. There is no indication in the record Mrs. Haynes or her son sought restitution prior to the formal hearing.

. Mrs. Haynes never received the money orders from respondent. Respondent later testified the money orders went back to his office after several weeks and he forwarded them to Mr. Haynes, who in turn forwarded them to his mother.

. The information submitted at the reconvened hearing indicated respondent failed to produce any money orders purchased at the time he received installment payments from Mrs. Haynes between 1996 and 1997. Specifically, the parties stipulated to the following information:
M/O Purchased M/O Amt. M/O Serial No. Information
4/3/98 $50 7-707578972-1 produced at hearing; payable to Mr. Haynes;
4/30/98 $100 7-707577574-0 produced at hearing; payable to the Louisiana State Bar Association;
5/5/98 $100 7-707577896-3 produced at hearing; payable to South Central Bell;
7/17/98 $100 7-707844676-0 produced at hearing; payable to Patricia Haynes;
7/21/98 $250 7-175645595-4 produced at hearing; payable to respondent;
7/21/98 $250 7-707844787-1 produced at hearing; payable to Patricia Haynes; and
7/21/98 $250 7-707844788-2 produced at hearing; payable to Patricia Haynes
7/22/98 DATE OF FORMAL HEARING
7/29/98 $200 7-707844991-7 not produced at hearing; payable to Patricia Haynes;
and
8/8/98 $250 7-175709585-7 not produced at hearing; payable to Patricia Haynes.

. The formal charges did not allege a violation of Rule 1.15.

. Rule 1.5(f)(6) provides, in part, ‘‘[w]hen the client pays the lawyer a fixed fee or a minimum fee for particular services ... and a fee dispute subsequently arises between the lawyer and the client, either during the course of the representation or at the termination of the representation, the lawyer shall immediately refund to the client the unearned portion of the fee, if any.”

. Standard 4.13 provides "reprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client.”

. Rule 1.5(f)(4) provides, in pertinent part, ”[w]hen the client pays the lawyer an advance deposit to be used for costs and expenses, the funds remain the property of the client and must be placed in the lawyer’s trust account.”

. However, it is noteworthy that the formal charges do not allege a violation of Rule 8.1.

. Relying on State v. Countennan, 475 So.2d 336 (La.1985), the parties recognized Mr. Haynes could still seek post-conviction relief with a motion for out-of-time appeal.

. In Louisiana State Bar Ass'n v. Martin, 451 So.2d 561 (La.1984), a case decided prior to the enactment of Rule XIX, we held that formal and technical pleadings are not essential in disciplinary proceedings against an attorney, and all that is required is that the charges against defendant "shall be so specific as to fairly inform him of the misconduct of which he is accused.” However, Martin involved the omission of a single disciplinary rule from otherwise detailed formal charges. By contrast, the letter in the instant case merely informed respondent that the ODC believed his testimony at the original hearing was false, but did not indicate whether it intended to accuse him of separate disciplinary infractions arising from these charges, or simply intended to use this conduct as an aggravating factor in connection with the previously-filed formal charges. Under these facts, Martin is distinguishable.