*1285 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.*
11 This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Wade Richard, an attorney licensed to practice law in Louisiana but currently on interim suspension for threat of harm to the public. In re: Richard, 06-0256 (La.2/15/06), 921 So.2d 103.
UNDERLYING FACTS AND PROCEDURAL HISTORY
The ODC filed two separate sets of formal charges against respondent.[1] Respondent answered the formal charges and denied any misconduct. The two matters were consolidated by order of the hearing committee chair for a hearing on the merits.

09-DB-015

Count I

In 2002, Acadia Parish law enforcement authorities executed a search warrant at respondent’s law office in Crowley, Louisiana. Among the items seized at that time was respondent’s computer, which contained evidence indicating respondent had | falsified an MRI report and sold it to others, who intended to use the falsified record to illegally obtain narcotic prescription drugs. An Acadia Parish grand jury subsequently returned a three-count indictment charging respondent with intentionally furnishing a false or fraudulent medical report in order to obtain a controlled dangerous substance; conspiracy to possess a Schedule II controlled dangerous substance (Oxycodone) by falsifying a medical report; and forgery of medical documents, all felonies under state law. In 2005, respondent executed a written agreement with the Acadia Parish District Attorney’s Office by which he agreed to withdraw from the practice of law for nine months in exchange for a dismissal of the criminal charges.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 8.4(b) (commission of a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer) and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

Count II

In June 2006, the ODC received correspondence from the Bank of Commerce & Trust Company reporting that respondent’s trust account was overdrawn in the amount of $233.84. Respondent failed to reply to the ODC’s inquiry regarding the matter, necessitating the issuance of a subpoena to compel his sworn statement. However, respondent was incarcerated on the date the sworn statement was scheduled, and thus he did not appear.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.15 (safekeeping property of clients or third parties) and 8.1(c) (failure to cooperate with the ODC in its investigation).

U09-DB-015

In November 2006, respondent was charged with one count of second-degree *1286 robbery and one count of second-degree battery. The criminal charges stemmed from a September 24, 2006 incident in which respondent went to the home of his father, Daniel Richard, and attempted to remove a two-gallon can of gasoline from his father’s truck, without permission. Mr. Richard told respondent to drop the gasoline can and leave the premises. In response, respondent approached Mr. Richard, who was standing on the porch, and pushed him down. When Mr. Richard tried to retrieve the gasoline can from respondent’s possession, respondent pushed him down again. Thereafter, Mr. Richard went inside and attempted to dial 911. Respondent followed Mr. Richard into his residence and disconnected the call. As a result of the confrontation, Mr. Richard began bleeding from his wrist. Mr. Richard sought medical attention for his injury and subsequently learned one of his fingers was broken, requiring surgery. In 2009, respondent pled no contest to criminal mischief and was sentenced to serve thirty days in jail, with credit for time served. The remaining charges were dropped pursuant to a plea agreement.
The ODC alleged respondent violated Rule 8.4(b) of the Rules of Professional Conduct.
DISCIPLINARY PROCEEDINGS
After the two sets of formal charges were consolidated, this matter proceeded to a hearing on the merits. The ODC called several witnesses to testify at the hearing, and respondent testified on his own behalf and on cross-examination by the ODC. During his testimony, respondent explained how he came to create the altered MRI report. According to respondent, he agreed to let Robert Fontenot come to his office Rafter hours to use his computer. At this time, respondent was defending Mr. Fontenot in an unrelated drug charge matter. When Mr. Fontenot arrived, he handed respondent a copy of his MRI report and requested that respondent create a “duplicate original.” Respondent offered to make photocopies of the report, but in response, Mr. Fontenot indicated that the report “needs to be printed out of a printer, not a copy machine.” Respondent confirmed that what Mr. Fontenot wanted him to do was “print this document as is out of my computer,” a request respondent thought was a waste of time. Nevertheless, respondent agreed to comply with Mr. Fontenot’s request for a fee of $50.
Respondent testified that he “typed out” Mr. Fontenot’s MRI report, printed the document, and gave it to him.[2] According to respondent, Mr. Fontenot then asked him to change the report by putting “somebody else’s name on it.” Respondent protested that changing the patient’s name “doesn’t make it an MRI,” but he agreed to do what Mr. Fontenot asked and typed the name of Tanya Hanks on the report.[3] Respondent also typed in Ms. Hanks’s date of birth (information he said he obtained from Mr. Fontenot) and altered the billing number and the MRI exam date. The only information respondent did not change was the diagnosis, which he testified he left the same so Mr. Fontenot “knew that was his diagnosis.” Asked why he would have made the al *1287 tered report at all, respondent testified he was trying to “test” his abilities “of using the computer and creating a document.”
In any event, respondent denied giving the altered MRI report to Mr. Fontenot. Respondent testified that he printed the MRI report after he finished changing it and |s“just threw it on my desk.” Asked whether he knew Mr. Fontenot would take the altered MRI report and use it to obtain illegal drugs, respondent first said he did not, but then admitted he “knew it was a longshot possibility.”
In his defense, respondent argued all the criminal charges against him were formally dismissed. Respondent noted his written agreement with the Acadia Parish District Attorney, in which he agreed to “voluntarily withdraw” from the practice of law for a period of nine months.

Hearing Committee Report

After consideration of the consolidated charges, the hearing committee made the following factual findings based upon the evidence and testimony at the hearing:
1. Respondent conspired with Robert Fontenot, Ted Langlinais, and Tanya Hanks to commit forgery and, in fact, forged medical records for the purpose of illegally obtaining controlled substances.
2. The testimony of Ms. Hanks in its entirety was both compelling and credible.
3. Respondent failed to produce required trust account records for the ODC. These records were available from the bank and obtained by the ODC for the purpose of the hearing.
4. [In May 2006], respondent created an overdraft in his client trust account in the amount of $233.84.
5. As of July 27, 2009, that overdraft had not been addressed.
6. On [September 24, 2006], respondent went to the home of his father and took a can of gasoline, without consent.
7. On [September 24, 2006], respondent battered his father, breaking his father’s finger and inflicting severe pain and mental anguish.
1 ñ8. Mr. Daniel Richard’s testimony concerning this incident was completely credible, and the testimony of respondent incredible.[4]
9. On July 27, 2009, during his testimony at the hearing before the committee, respondent committed perjury.[5]
Based on these facts, the committee determined respondent violated Rules 1.15, 8.1(c), 8.4(b), and 8.4(c) of the Rules of Professional Conduct. The committee also found that by committing perjury during the hearing, respondent engaged in conduct prejudicial to the administration of justice, a violation of Rule 8.4(d), which was not charged in the formal charges.
The committee determined respondent intentionally violated duties owed to the public by committing forgery and perjury, which conduct involves dishonesty, fraud, and deceit. As to his perjury, respondent’s conduct involved substantial prejudice to the administration of justice. Relying on the ABA’s Standards for Imposing Lawyer Sanctions, the committee determined the baseline sanction is disbarment.
*1288 The committee found the following aggravating factors present: prior disciplinary offenses[6] and substantial experience in the practice of law (admitted 1988). The committee found no mitigating factors present.[7] Under the circumstances, the committee recommended respondent be disbarred.
| Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.

Disciplinary Board Recommendation

After reviewing the consolidated matters, the disciplinary board found most of the hearing committee’s factual findings are supported by the record. However, the board determined the committee was only partially correct in finding that respondent failed to produce required bank records which were obtained by the ODC for the purpose of the hearing. The board noted that although the ODC requested respondent’s trust account bank statement for June 2006 — a request with which respondent did not comply because he purportedly did not have a copy of the statement at the time of the request — the record does not indicate that the ODC requested any other bank statements, or that any statements were offered into evidence at the hearing by the ODC.
Additionally, the board declined to adopt the committee’s factual finding that respondent committed perjury in his testimony before the committee. Citing In re: Harris, 00-1825 (La.l1/13/00), 774 So.2d 963, wherein an attorney manufactured evidence and presented perjured testimony in an attempt to avoid discipline, the board pointed out that an attorney’s post-formal charge conduct should be treated as separate and distinct misconduct in a subsequent disciplinary proceeding.
Based upon these findings, the board determined respondent violated Rules 8.4(b) and 8.4(c) of the Rules of Professional Conduct. However, the board found the alleged violations of Rules 1.15 and 8.1(c) were not proven by clear and convincing evidence, nor was the uncharged violation of Rule 8.4(d) found by the committee.
| sWith regard to Rule 1.15, the board concluded the mere fact that respondent created an overdraft in his client trust account, without more, is insufficient to establish a rule violation. Respondent provided uncontroverted testimony that his client trust account balance was $61.19 when he voluntarily ceased practicing law. Respondent further testified that no client funds remained in his trust account when he inadvertently used the account to pay a doctor bill on behalf of a friend. The ODC presented no evidence to establish that the $61.19 remaining in respondent’s trust account at the time of the overdraft belonged to a client or other interested person.
With regard to Rule 8.1(c), the board determined there is insufficient evidence to establish that respondent failed to cooperate with the ODC in its investigation of the trust account overdraft. The record contains little relevant information concerning the ODC’s request for respondent’s trust account records. Further, although the ODC alleges respondent’s failure to appear *1289 for a scheduled sworn statement on November 14, 2006 constitutes a failure to cooperate, the evidence in the record, including a proces verbal given by the ODC, fully establishes that respondent was incarcerated at the time; therefore, respondent could not have attended the sworn statement.
The board determined respondent knowingly violated a duty owed to the public by engaging in criminal conduct. His conduct resulted in actual injury. Respondent’s commission of a criminal act undermines the public’s confidence in the integrity of attorneys. His actions in forging medical records allowed others to circumvent the laws pertaining to controlled dangerous substances, and his actions during the altercation with his father resulted in actual injury to his father. Relying on the ABA’s Standards for Imposing Lawyer Sanctions, the board determined the applicable baseline sanction in this matter is disbarment.
Rln aggravation, the board identified the following factors: prior disciplinary offenses, a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, and substantial experience in the practice of law. The board found no mitigating factors are present.
Turning to the issue of an appropriate sanction, the board determined that each instance of respondent’s misconduct, standing alone, warrants a two-year suspension from the practice of law; however, taken together, respondent’s conduct warrants the harsher sanction of disbarment, particularly in light of his prior reprimand for engaging in criminal conduct. The board observed that respondent has a “demonstrated propensity to engage in criminal activity,” which leads to the conclusion that he lacks the requisite good moral character and fitness necessary to practice law.
Based on this reasoning, the board recommended respondent be disbarred, retroactive to the date of his interim suspension.
The ODC filed an objection to the disciplinary board’s report and recommendation, seeking the imposition of permanent disbarment. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).[8]
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an | ^independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 688 So.2d 714; In re: Pardue, 98-2865 (La.3/11/94), 633 So.2d 150.
In this consolidated matter, the record reflects that respondent forged a *1290 medical record at the request of a client whom he represented on drug charges. Based on respondent’s own testimony, it appears he suspected his client intended to take the forged record to buy drugs. Moreover, respondent was convicted of criminal mischief stemming from a violent physical altercation with his elderly father. This conduct violated Rules 8.4(b) and 8.4(c) of the Rules of Professional Conduct.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
The baseline sanction for respondent’s misconduct is clearly disbarment. Respondent acted knowingly, if not intentionally, causing actual injury. The record supports the aggravating factors found by the disciplinary board. The mitigating Infactor of imposition of other penalties or sanctions is also present. Given these facts, we find no reason to deviate downward from the baseline sanction of disbarment.
Accordingly, based on our review of the record, we conclude the disciplinary board’s recommendation is appropriate, and we will order that respondent be disbarred.
DECREE
Upon review of the findings and recommendations of the hearing committee and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Wade Paul Richard, Louisiana Bar Roll number 19119, be and he hereby is disbarred, retroactive to February 15, 2006, the date of his interim suspension. His name shall be stricken from the roll of attorneys and his license to practice law in the State of Louisiana shall be revoked. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
KNOLL and CLARK, JJ., dissent and assign reasons.
GUIDRY, J., dissents and would impose permanent disbarment.

 Retired Judge Philip C. Ciaccio, assigned as Justice ad hoc, sitting for Chief Justice Catherine D. Kimball.

. The first set of formal charges, 09-DB-015, originally consisted of three counts; however, during the formal hearing, the ODC withdrew Count III because the complainant in that matter passed away before the hearing took place. Accordingly, this opinion does not address Count III, and simply refers to 09-DB-015 as if it consisted of two counts.

. No "duplicate” MRI was found on respondent’s computer hard drive.

. Ms. Hanks testified to her involvement with Robert Fontenot and Ted Langlinais in an ongoing scheme to obtain prescription drugs, some of which they intended to sell and some of which they intended to use to satisfy their own addictions. Ms. Hanks admitted she paid $75 for the forged MRI report created by respondent and assisted in the forgery to facilitate her continued drug abuse.

. Respondent had testified that his mother, now deceased, gave him permission to take the gasoline can.

. Although respondent testified he had no idea Mr. Fontenot might use the forged MRI to obtain drugs, he subsequently admitted he was aware that Mr. Fontenot might, in fact, pursue that course of action. The hearing committee found this direct contradiction under oath constitutes perjury.

. In 1999, respondent consented to be publicly reprimanded by the disciplinary board after he pled no contest to a misdemeanor charge of unauthorized use of a movable valued at less than $1,000. The criminal charge stemmed from respondent's theft of a knife, a pistol, and a caller ID box from his client in a domestic matter.

. Respondent testified that he suffers from bipolar disorder and depression, but on the whole, the committee did not believe he successfully established the mitigating factor of mental disability, given his actions at the hearing, which the committee characterized as “bizarre,” and "the lack of any evidence in progress in treatment.”

. Respondent did not file a timely objection to the disciplinary board’s recommendation. However, after this court ordered briefing in response to the ODC’s objection, respondent filed a pleading captioned "Wade P. Richard’s Objections to the Report of the Louisiana Attorney Disciplinary Board.” In this pleading, respondent asserted that the board's recommendation of disbarment is excessive in light of the court's prior jurisprudence. He also objected to some of the conclusions drawn by the hearing committee based on the facts presented at the hearing.